UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Dakotans for Health and Rick Weiland, | ) ) ) | 4:25-cv-4050 |
| Plaintiffs, | ) ) ) | Civ. 25-_____ |
| v. | ) ) ) | |
| Secretary of State Monae Johnson, in her official capacity only, | ) ) ) ) | |
| Defendant. | ) ) | |

**Complaint for Preliminary and Permanent Injunction**

## Parties

1. Dakotans for Health is a South Dakota ballot question committee and healthcare advocacy network dedicated to improving healthcare and health outcomes, which uses its state constitutional right to initiate amendments to the South Dakota constitution and laws to help achieve its goals.

2. Rick Weiland is Chair of Dakotans for Health.

3. Monae Johnson is the Secretary of State of South Dakota and is sued in her official capacity only.

## Jurisdiction

4. This action is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3).

## Facts

5. In 1898, South Dakota was the first state to allow initiated proposed laws.

6. In 1972, South Dakota amended its constitution to allow initiated constitutional amendments.

7. All signatures on a petition to initiate a law or a constitutional amendment must be filed with the Secretary of State by a date certain, so that the

Secretary can verify that the petition contains sufficient valid signatures for it to qualify to appear on the ballot at the general election on the first Tuesday in November of every even-numbered year.

8. The verification process takes at most a few days.

9. The deadline for the Secretary to complete the verification process is twelve weeks before the general election, which is early August. S.D.C.L. § 12-13-1.

10. The precise issue this case raises—whether South Dakota can set the petition filing deadline more than six months before an election, and thereby ban petition circulation and signature collection more than six months before an election—was litigated and decided in 2023 in *SD Voice v. Noem*, Civ. 1:19-CV-1017-CBK.

11. That case produced decisions by Senior United States District Judge Charles B. Kornmann reported at 432 F. Supp. 3d 991 (D. S. D. 2020), 557 F. Supp. 3d 937 (D. S. D. 2021), and 2023 U. S. Dist. Lexis 91747, 2023 WL 3627649, and decisions by the Eighth Circuit reported at 987 F.3d 1186 (2021) and 60 F.4th 1071 (2023).

12. Judge Kornmann held that South Dakota's one-year pre-election deadline to file a petition for an initiated law violated the First Amendment; that

South Dakota's one-year pre-election deadline to file a petition for an initiated constitutional amendment did not violate the First Amendment; that the pre-2006 six-month deadline "worked just fine"; that "[s]ix months gives the Secretary of State's office more than adequate time to do the work that must be done"; and that "a filing deadline of six months before the election at which the initiative would receive a vote is the constitutional limit for how remote a deadline may be set from the election." *SD Voice v. Noem*, 557 F. Supp. 3d 937, 945-48 (D.S.D. 2021). Accordingly, Judge Kornmann ordered that the deadline to file ballot measures for initiated laws "is to be the first Tuesday in May during election year." *SD Voice v. Noem, supra,* 557 F. Supp. 3d at 949.

13. The Eighth Circuit affirmed the holding that the filing deadline for an initiated law violates the First Amendment; reversed the holding that the filing deadline for an initiated constitutional amendment does not violate the First Amendment; and reversed the district court's order imposing a filing deadline of the first Tuesday in May, ruling that the district court should have allowed the South Dakota Legislature to decide how to respond to its ruling that the most remote filing deadline before an election that is consistent with the First Amendment is six months. *SD Voice v. Noem*, 60 F.4th 1071 (8th Cir. 2023).

14. After the case was remanded, the Legislature mooted it by enacting Senate Bill 113 (2023), which established a filing deadline of the first Tuesday in May for both initiated laws and initiated constitutional amendments. *SD Voice v. Noem*, Civ. 19-1017-CBK, Doc. 94-1.

15. This filing deadline was virtually the same as a six-month pre-election filing deadline, the only difference being insignificant: that in some years the deadline could be a few days less than six months, and in other years it could be a few days more than six months. *SD Voice v. Noem*, Civ. 19-1017-CBK, Doc. 94 at 2.

16. Accordingly, plaintiffs moved to dismiss the case without prejudice as moot. *SD Voice v. Noem*, Civ. 19-1017-CBK, Doc. 94.

17. The Court granted the motion. *SD Voice v. Noem*, 2023 U. S. Dist. Lexis 91747, 2023 WL 3627649.

18. In 2024, using the filing deadline the Legislature established in response to *SD Voice v. Noem*, Dakotans for Health filed petitions with 54,281 citizen signatures proposing a constitutional amendment to restore *Roe v. Wade* rights to the women of South Dakota—all such signatures having been obtained despite opponents' aggressive campaign to disrupt signature collection by harassing petition circulators and potential signers.

19. South Dakota House Majority Leader Jon Hansen was the public face of the political fight against the *Roe v. Wade* constitutional amendment.

20. Majority Leader Hansen, as a lawyer, representing an entity that he co-chaired, sued unsuccessfully attempting to stop South Dakotans from voting on the amendment.

21. In 2024, using the same filing deadline of the first Tuesday in May, Dakotans for Health filed petitions proposing a law to eliminate the state sales tax on groceries.

22. Two other citizen-initiated measures, both using the same first Tuesday in May filing deadline, qualified for the 2024 ballot.

23. One, called an "Open Primaries" measure, would have amended the South Dakota constitution by establishing a top-two system for primary elections.

24. The other would have amended South Dakota law by legalizing recreational marijuana.

25. These four measures—the two sponsored by Dakotans for Health, and the two sponsored by other groups—allowed South Dakotans to exercise their First Amendment rights to propose and vote on changes to the South Dakota Constitution and laws.

26. All four were filed with the Secretary of State within ten days of the May 7 deadline.

27. As a result of these measures, and in particular the *Roe v. Wade* measure, the South Dakota Legislature, led by Majority Leader Hansen, proposed and enacted a number of measures in the 2025 Legislature to restrict South Dakotans' rights to initiate changes to laws and the constitution.

28. The measure at issue in this lawsuit is House Bill 1184 (2025), which rolls back the first Tuesday in May filing deadline the Legislature established in 2023 to the first Tuesday in February.

29. The rollback means that petition circulators must seek final signatures nine months before an election instead of six months before an election, when there is less interest in political matters because the election is farther away, and in the significantly harsher weather of November, December, and January, which is important because most signature gathering requires at least some travel, and signatures as a practical matter must be sought out of doors.

30. "[D]eadlines far before election day are problematic because of the general disinterest of potential voters so far removed from elections." *SD Voice v.*

*Noem*, 60 F.4th at 1080, quoting *Libertarian Party of Ark.*, 962 F.3d 390, 400 (8th Cir. 2020).

31. "Common sense" is that restricting petition circulation by an early filing deadline will thus "dilute the effectiveness of the speech." *SD Voice v. Noem*, 60 F. 4th 1071, 1078 (8th Cir. 2023).

32. The earlier filing deadline makes it "less likely that [plaintiff] will garner the number of signatures necessary to place a matter on the ballot, thus limiting its ability to make its political causes the focus of statewide discussion." *SD Voice v. Noem, supra,* 60 F. 4th at 1078, quoting *Meyer v. Grant*, 486 U.S. 414, 423 (1988) (cleaned up).

33. Dakotans for Health and Weiland have already obtained state approval to circulate two citizen petitions for the 2026 ballot.

34. One would amend Article III, § 1 of the Constitution by adding: "Any law or measure passed by the Legislature affecting the people's exercise of their right to initiative and referendum is effective only if approved by the electors of the state at the general election immediately following Legislative passage."

35. The other would amend Article III, § 1 of the Constitution by adding: "The Legislature may not repeal or amend a measure proposed by the people and

approved by the electors for seven years from the measure's effective date, except by a three-fourths vote of the members elected to each house, and only if the repeal or amendment is approved by the electors of the state at the general election immediately following Legislative passage."

36. Dakotans for Health and Weiland sustained a practical, specific, concrete, particularized, actual injury to their First Amendment rights from HB 1184; their injury is caused by HB 1184, and it will be redressed by a favorable decision. As explained in the Declaration of Cory Heidelberger filed herewith:

"a. Obtaining sufficient valid signatures to qualify an initiative for the ballot is a challenging process. Currently 35,017 valid signatures are required to qualify a proposed constitutional amendment for the ballot, and half that number are needed to qualify a proposed initiated measure for the ballot.

"b. Circulating petitions is a very human process, involving literally hundreds of thousands of interactions between petition circulators and their fellow citizens, having often unexpected conversations about important public policy issues on sidewalks and front porches and at busy public events, outdoors in good and not-so-good weather. Circulated in these challenging settings, ballot measure petitions always include many invalid signatures, for numerous innocent reasons.

Signers may not know that they are not registered to vote. Signers may not realize that they have not updated their voter registration since moving from one county to another. Signers may write their birthdate instead of the date they sign. Signers may sign early during a petition drive, then months later be unsure whether they've signed a particular petition and mistakenly sign again.

"c. These numerous potential causes of innocent error contribute to a typical error rate of more than one in five signatures turning out to be invalid. Nationally, the percentage of valid petition signatures for initiatives certified to appear on state ballots from 2017 to 2024 averaged 77.06%, which is equivalent to an average invalidity rate of 22.94%. Seven of the eight years listed show average invalidity rates higher than 20%. (https:ballotpedia.org/Initiative_petition _signature_validity_rates, last visited March 14, 2025).

"d. Because of the certainty of many such invalid signatures, any group seeking to be reasonably sure of submitting sufficient valid signatures should submit at least 45,500 signatures for a constitutional amendment and half that number for an initiated measure. Dakotans for Health's 2024 *Roe v. Wade* initiative submitted 54,281 signatures.

"e.  In order to obtain all these signatures, a petition drive should start as soon as possible, subject to the South Dakota law that no signature may be obtained more than two years before an election.

"f.  The May deadline allows sponsors 18 months to collect signatures. Moving the deadline to February reduces the total time available for groups that start at the earliest possible time by 17%. The total time available for groups that start later is reduced even more.

"g.  The final weeks and days before the petition submission deadline are crucial. Circulators push harder in the final weeks and days. Every day closer to the deadline is also a day closer to the election, and every day closer to the election means more voters are paying attention to political issues and are more inclined to engage in core political speech like discussing and signing petitions.

"h.  HB 1184 moves that crucial period of heightened effort and citizen engagement from the weeks and months before early May to the weeks and months before early February. In those earlier months, daylight hours are shorter, with the sun setting before many people even get home from work; snow days may

11

cancel public gatherings; people stay home more; and frigid temperatures make on-the-street petitioning far less safe, appealing, and productive.

"i.    Financial contributions are a critical component of every initiated petition campaign.  The new first-Tuesday-in-February pre-election filing requirement makes it less likely that any petition drive, including DFH's, will be able to raise the funds needed for a successful campaign, because it makes it less likely that a petition drive will be successful, and potential donors do not like to contribute to campaigns that are unlikely to be successful.

"j.   The new first-Tuesday-in-February pre-election filing requirement discourages any petition drive from going forward, because it makes the petition drive less likely to be successful, and no one wants to spend time and effort on petition drives that are not likely to be successful."

37.   Defendant is charged with enforcing HB 1184, and unless restrained, will enforce it.

38.   "The right of initiative is very important in states like South Dakota where the dominant political party controls, and has for 26 years, the office of the governor, the state House and the State Senate." *SD VOICE v. Noem*, 380 F. Supp. 3d 939, 950 (D.S.D., No. Div.)

39. The dominant political party's 26-year control of the three branches of South Dakota government that existed in 2019 is now 32 years and counting, with no end in sight.

40. In recent years, the citizens of South Dakota have regularly and actively used the initiated law and constitutional amendment democratic process through a number of important recent initiatives that voters enacted, including:

- a health care patients' rights law in 2014 (Initiated Measure 17);

- a minimum wage law in 2014 (Initiated Measure 18);

- a crime victims' rights law in 2016 (Constitutional Amendment S);

- a payday lending law in 2016 (Initiated Measure 21);

- campaign finance and lobbying laws in 2016 (Initiated Measure 22);

- medical marijuana legalization in 2020 (Initiated Measure 26);

- recreational marijuana legalization the same year (Constitutional Amendment A); and

- Medicaid expansion in 2022 (Constitutional Amendment D).

41. This case is another example in an increasingly long line of recent attempts by the dominant political party to unconstitutionally restrict its citizens' right to propose and enact initiatives.

42. In 2017, the Speaker of the House of Representatives proposed a successful ballot initiative that prohibited out of state contributions to state ballot question committees, in violation of the First Amendment and the Commerce Clause. *SD Voice v. Noem*, 380 F. Supp. 3d 939 (D. S. D. 2019).

43. In 2019, South Dakota enacted HB 1094, which imposed registration requirements on anyone who "solicits" signatures for an initiated petition, and required petition circulators to put extensive private information into a database that was accessible to the public while petitions were being circulated, all in violation of the First Amendment. *SD Voice v. Noem*, 432 F. Supp. 3d. 991 (D.S.D., 2020), *appeal dismissed as moot* 987 F.3d 1186 (8th Cir. 2021).

44. In 2020, South Dakota enacted SB 180, which required paid petition circulators to put extensive private information into a database that was accessible to the public while petitions were being circulated, which was preliminarily enjoined as in violation of the First Amendment. *Dakotans for Health v. Noem*, 543 F.

Supp. 3d 769 (D. S. D. 2021), *affirmed* 52 F.4th 381 (8th Cir. 2022). After the Eighth Circuit decision, South Dakota agreed not to enforce SB 180, mooting the case.

## Cause of Action—First Amendment

45. All paragraphs above are incorporated herein by this reference.

46. HB 1184 violates the First Amendment.

## Request for Relief

Plaintiffs request judgment granting:

1. A preliminary injunction barring defendant from enforcing or threatening to enforce HB 1184;

2. A permanent injunction barring defendant from enforcing or threatening to enforce HB 1184;

3. Attorney fees and costs pursuant to 42 U.S.C. § 1988; and

4. Such other and further relief as the Court deems just.

Dated: April 1, 2025    /s/ James D. Leach
James D. Leach
Attorney at Law
1617 Sheridan Lake Rd.
Rapid City, SD 57702
Tel: (605) 341-4400
jim@southdakotajustice.com
Attorney for Plaintiffs

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Dakotans for Health and Rick Weiland

## DEFENDANTS
South Dakota Secretary of State Monae Johnson, in her official capacity

**(b)** County of Residence of First Listed Plaintiff: **Minnehaha**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James D. Leach/Attorney/1617 Sheridan Lake Rd/Rapid City, SD 57702/605 341 4400

Attorneys *(If Known)*
Marty Jackley, Attorney General of SD

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | [x] 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 550 Civil Rights / ☐ 555 Prison Condition / ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District (specify)
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause:
SD House Bill 1184 (2025) violates the First Amendment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE: Hon. Charles B. Kornmann
DOCKET NUMBER: 1:19-CV-01003-CBK

DATE: April 1, 2025
SIGNATURE OF ATTORNEY OF RECORD: /s/ James D. Leach

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____