UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAKOTANS FOR HEALTH and RICK WEILAND, <br><br> Plaintiffs, <br><br> vs. <br><br> MONAE JOHNSON, SECRETARY OF STATE, in her official capacity only, <br><br> Defendant. | 4:25-CV-04050-CCT <br><br><br> **ORDER GRANTING PERMANENT INJUNCTION** |

In 2025, the South Dakota Legislature passed HB 1184, changing the filing deadline for measures seeking to initiate laws under SDCL § 2-1-1.2 and constitutional amendments under SDCL § 2-1-1.1 from the first Tuesday in May (six months prior to the general election) to the first Tuesday in February (nine months prior to the general election). Docket 1 ¶¶ 27–29. Believing that a nine-month deadline is unconstitutional under the First Amendment, Dakotans for Health and Rick Weiland (collectively, "Dakotans for Health")[1] brought this lawsuit on April 1, 2025, against Secretary of State Monae Johnson (the State) in her official capacity pursuant to 42 U.S.C. § 1983, seeking to enjoin the enforcement of HB 1184. Docket 1.

---

[1] "Dakotans for Health is a South Dakota ballot question committee and healthcare advocacy network dedicated to improving healthcare and health outcomes, which uses its state constitutional right to initiate amendments to the South Dakota constitution and laws to help achieve its goals." Docket 1 ¶ 1. Rick Weiland is the chair. *Id.* ¶ 2.

1

Also on April 1, 2025, Dakotans for Health filed a motion for preliminary and permanent injunctions pursuant to Federal Rule of Civil Procedure 65. Docket 3. The State opposed the request, Docket 25, and filed an answer to the complaint, Docket 34.[2] The Court held evidentiary hearings on June 23, 2025 and August 8, 2025. Dockets 52, 61. Dakotans for Health presented testimony from Weiland, Cory Heidelberger, and Nancy Turbak. The State presented testimony from Christine Lehrkamp, Jon Hansen, and Sara Frankenstein. Having now considered the parties' evidence and written and oral arguments, the Court concludes for the reasons stated in this order that the nine-month deadline created by HB 1184 is unconstitutional in violation of the First Amendment.

## BACKGROUND

"The South Dakota Constitution authorizes its citizens to propose changes to state statutes and the state Constitution." *SD Voice v. Noem* (*SD Voice IV*), 60 F.4th 1071, 1075 (8th Cir. 2023).[3] However, before a proposed change may be placed on a statewide ballot, certain statutory requirements must be met. *See id.* (detailing the "hurdles" that need to be cleared). Relevant

---

[2] In its answer, the State included a demand for a jury trial. Docket 34 at 8. Dakotans for Health moved to strike the jury trial demand. Docket 35. At the hearing on June 23, 2025, the State withdrew its jury trial demand.

[3] There were multiple *SD Voice v. Noem* cases. There was a prior district court decision, *SD Voice v. Noem* (*SD Voice I*), 432 F. Supp. 3d 991 (D.S.D. 2020), that was appealed and dismissed in part as moot and dismissed for lack of jurisdiction because the appeal was from a non-final judgment, *SD Voice v. Noem* (*SD Voice II*), 987 F.3d 1186 (8th Cir. 2021). After a bench trial, the district court issued another decision, *SD Voice v. Noem* (*SD Voice III*), 557 F. Supp. 3d 937 (D.S.D. 2021), that was the reviewed by the Eighth Circuit in *SD Voice IV*.

here is the requirement that a proposed change be supported by a sufficient number of petition signatures. SDCL § 2-1-1. To meet this requirement, sponsors of both initiated measures and constitutional amendments circulate petitions to collect signatures. *See SD Voice IV*, 60 F.4th at 1075; *see also* SDCL § 2-1-1.3. But the window of time during which petition circulators may collect signatures is limited—no signature may be collected more than twenty-four months before the preceding general election, and in light of HB 1184, the petition and all signatures must be filed with the Secretary of State no later than the first Tuesday in February of the general election year. *See* SDCL §§ 2-1-1.1, -1.2; *see also* 2025 S.D. Sess. Laws ch. 16, § 2.

As previously noted, the filing deadline prior to HB 1184 was the first Tuesday in May of the general election year—a deadline set by the Legislature in 2023, after the Eighth Circuit Court of Appeals held that the one-year filing deadline in SDCL §§ 2-1-1.1 and -1.2 violates the First Amendment. *See SD Voice IV*, 60 F.4th at 1082–83. Dakotan for Health now argues that the nine-month deadline created by HB 1184 is likewise unconstitutional in violation of the First Amendment. *See generally* Docket 8. Dakotans for Health also claims that the State is estopped from arguing otherwise because the district court, in *SD Voice v. Noem* (*SD Voice III*), 557 F. Supp. 3d 937 (D.S.D. 2021), concluded that a six-month deadline before the election "is the constitutional limit." Docket 8 at 5, 8–12. In response, the State argues that Dakotans for Health lacks standing to challenge the nine-month deadline, that estoppel does not apply under the circumstances, and that the nine-month deadline does not

3

violate the First Amendment because it serves a legitimate, if not compelling, government interest. *See generally* Docket 25.

## DISCUSSION

### I.    Standing

To establish standing, Dakotans for Health must show an "injury in fact" that is "fairly traceable to the challenged action of the defendant" and "likely" to "be redressed by a favorable decision." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992) (cleaned up). "A plaintiff can establish an injury in the First Amendment context in two ways: by identifying protected speech in which it would like to engage but that is proscribed by statute, or by self-censoring to avoid the credible threat of prosecution." *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 1000 (8th Cir. 2022) (citation omitted). "The First Amendment standing inquiry is 'lenient' and 'forgiving.'" *Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022) (quoting *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699–700 (8th Cir. 2021)). Dakotans for Health has the burden of establishing standing. *Id.*

Dakotans for Health claims it has standing to challenge the deadline created by HB 1184 because its ability "to place initiatives on the ballot will be harmed by the unconstitutional early filing deadline" and a favorable decision by this Court will redress the injury. Docket 8 at 7–8. The State responds that because the filing deadline does not violate the First Amendment, Dakotans for Health "suffer[s] no injury and lack[s] standing to support the present suit." Docket 25 at 4–5.

4

The State conflates standing with the merits. *See Pratt v. Helms*, 73 F.4th 592, 594 (8th Cir. 2023) (noting that "it is important not to conflate Article III's requirement of injury in fact with whether a plaintiff has stated a cause of action because the concepts are not coextensive"). The question for standing is not whether the filing deadline *violates* the First Amendment; the question is whether Dakotans for Health can *litigate* that issue.

Dakotans for Health presented evidence through Heidelberger's detailed testimony to support that the three-month change in the deadline created by HB 1184 negatively impacts Dakotans for Health's ability to organize a petition drive and obtain signatures for a measure to be placed on a ballot. In fact, the State acknowledges that this type of petition circulation is core political speech protected by the First Amendment, *see* Docket 25 at 17–18; therefore, the Court finds incredulous the State's argument that Dakotans for Health lacks standing to litigate whether a nine-month deadline unconstitutionally restricts this core political speech.

In any event, Dakotans for Health has established that it faces a concrete, particularized, and actual injury from the filing deadlines created by HB 1184. *See, e.g., SD Voice IV*, 60 F.4th at 1078–79 (considering similar detrimental effects of a filing deadline on First Amendment protections). Dakotans for Health has also shown that the injury is redressable through injunctive relief. Therefore, the Court concludes that Dakotans for Health has standing.

5

## II.    Collateral Estoppel

Dakotans for Health seeks to apply offensive collateral estoppel to bar the State from arguing that a nine-month deadline is constitutional. In Dakotans for Health's view, the determination in *SD Voice III* that a six-month filing deadline "is the *constitutional limit* for how remote a deadline may be set from an election[,]" 557 F. Supp. 3d at 948 (emphasis added), forecloses the State from arguing that a deadline greater than six months is constitutional, Docket 8 at 9. Dakotans for Health notes that *SD Voice III*, like here, involved a claim that the preelection filing deadline violates the First Amendment and involved one same real party in interest—the State. Docket 8 at 9. Dakotans for Health further notes that the State lost its appeal in that case, and the case was remanded. *Id.* at 8. As it pertains to the district court's statement that six months is the constitutional limit, Dakotans for Health asserts the State "accepted" this determination by not further litigating it and, now, "is not entitled to another trial on the merits to attempt to justify a pre-election petition filing deadline of greater than six months." Docket 8 at 8–12.

In response, the State offers multiple reasons why offensive collateral estoppel does not apply here, including that this type of estoppel cannot be used against the government and that the issue to be decided in this case is not identical to that decided in the prior suit. *See* Docket 25 at 5–14. While the State's arguments raise meritorious questions, the Court only addresses whether Dakotans for Health has established that the issue decided in the

6

prior lawsuit is identical the issue the Court needs to decide in the current case.

Offensive collateral estoppel is a less common type of collateral estoppel; however, the United States Supreme Court recognized its validity in *Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322 (1979). The Court explained that "offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Id.* at 326 n.4. Just like the more common defensive collateral estoppel, offensive collateral estoppel requires satisfaction of a four-prong test: "(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?" *Aga v. Meade Cnty.*, CIV. 21-5059-JLV, 2022 WL 3716000, at *4 (D.S.D. Aug. 29, 2022) (quoting *Hamilton v. Sommers*, 855 N.W.2d 855, 866 (S.D. 2014)); *see also Parklane Hosiery*, 439 U.S. at 326 (noting generally that for estoppel to apply, the issues must be identical).

To determine whether the first prong has been met, a court looks at "the precise issues" litigated and decided in the prior proceeding, and the issues raised in the present case. *SDDS, Inc. v. South Dakota*, 994 F.2d 486, 493 (8th Cir. 1993) (citation omitted). "These issues must be identical for collateral

7

estoppel to apply." *Id.* (citing *Staab v. Cameron,* 351 N.W.2d 463, 465 (S.D. 1984)).

In *SD Voice III*, the district court determined that the one-year filing deadline for petitions to initiate laws violates the First Amendment, while the one-year deadline for petitions to amend the constitution does not. 557 F. Supp. 3d at 945–46. Thereafter, the court determined that the unconstitutional deadline could be severed from the remaining text of SDCL § 2-1-1.2. *Id.* at 947. But the court indicated that "the Legislature would not want the regulatory scheme to function without some deadline" and, further, that "[i]f plaintiffs are to have relief and the state's regulatory scheme is to function the Court must fashion a new deadline that represents the constitutional limit." *Id.* The court noted that the six-month deadline in a prior version of the statute "worked just fine" and thereafter held that the six-month deadline "must be reinstated[,]" making the deadline "the first Tuesday in May during the year of the election[.]" *Id.* at 948. The court then said, "A filing deadline of six months before the election at which the initiative would receive a vote is the constitutional limit for how remote a deadline may be set from the election." *Id.*

On appeal, the Eighth Circuit affirmed the district court's determination that the one-year filing deadline for petitions to initiate laws violates the First Amendment. *SD Voice IV*, 60 F.4th at 1082–83. However, it reversed the holding that the one-year filing deadline for petitions to amend the constitution does not violate the First Amendment, reasoning that there is no "legal basis for distinguishing the deadlines to submit petitions to initiate state statutes

8

from petitions to amend the state Constitution." *Id.* at 1083. The Eighth Circuit also reversed the court's creation of a new statutory deadline, holding that "prescribing a new filing deadline is outside the scope of the district court's authority." *Id.* The Eighth Circuit did not otherwise address the court's statement that a six-month deadline is the constitutional limit.

It is evident from a review of the district court's decision in *SD Voice III* and the Eighth Circuit's decision in *SD Voice IV* that the issue whether a six-month prefiling deadline is the constitutional limit was not the precise question litigated and decided. Rather, the question litigated and decided concerned whether the one-year deadline in SDCL §§ 2-1-1.1 and -1.2 violates the First Amendment. Because that question is not identical to what needs to be decided in this case, offensive collateral estoppel, to the extent it could be imposed against the State here, does not apply.

### III.    Permanent Injunction

"A permanent injunction requires the moving party to show actual success on the merits." *Miller v. Thurston*, 967 F.3d 727, 735 (8th Cir. 2020) (quoting *Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008)). Here, that means Dakotans for Health must show that the nine-month deadline created by HB 1184 is unconstitutional in violation of the First Amendment. "If actual success is found, courts must then consider three factors to determine whether a permanent injunction is warranted: '(1) the threat of irreparable harm to the moving party; (2) the balance of harms with

any injury an injunction might inflict on other parties; and (3) the public interest.'" *Id.* at 735–36 (citation omitted).

### A. Merits Question

#### i. Level of Scrutiny

The first step in determining whether Dakotans for Health is likely to succeed on the merits is to identify the applicable level of scrutiny. The Eighth Circuit explained that strict scrutiny does not always apply when a petition law implicates the First Amendment. *SD Voice IV*, 60 F.4th at 1079–80. Rather, courts are to use "the *Anderson/Burdick* sliding standard." *Id.* at 1080 (citation omitted). This standard "weigh[s] the character and magnitude of the burden the State's rule imposes on First Amendment rights against the interest the State contends justify that burden, and consider[s] the extent to which the State's concerns make the burden necessary." *Id.* (citation omitted). If the burden is severe, strict scrutiny applies. *Id.* If it is not severe, the court "review[s] the law 'to ensure it is reasonable, nondiscriminatory, and furthers an important regulatory interest.'" *Id.* (citation omitted).

The State cannot reasonably dispute that new filing deadline "limits the number of voices that will convey a message on the ballot by pushing back the deadline" to nine months before the election. *See id.* This means that petition circulation "is effectively banned" for nine months before the general election. *See id.* And, as the Eighth Circuit recognized, a deadline farther away from an election "makes it less likely that [a ballot committee] will secure the number of signatures necessary to place the matter on the ballot, thus limiting the ability

to advance statewide discussion on political issues." *Id.* (citation omitted). In light of this, the burden on the engagement of political speech caused by the nine-month deadline arguably goes beyond merely inconvenient and enters the realm of severe. However, the Court need not determine whether strict scrutiny applies because the nine-month deadline, like the one-year deadline examined in *SD Voice IV*, fails when lower scrutiny is applied. *See id.* (concluding that "we need not decide this issue because we conclude the statute fails under scrutiny for burdens that are less than severe" (citation omitted)).

### ii.  Scrutiny Applied

Under the less exacting review, courts must determine whether the burden imposed on the First Amendment "is reasonable, nondiscriminatory, and furthers an important regulatory interest." *Miller*, 967 F.3d at 740 (citation omitted). As it pertains to that inquiry, "the Court must not only determine the legitimacy and strength of each of those [government] interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson v. Celebrezze*, 460 U.S. 790, 789 (1983). To pass constitutional muster, the government interest must be "sufficiently weighty to justify the limitation" imposed on a party's rights. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) (citation omitted).

The State argues that the government interest in a nine-month preelection deadline is "to allow adequate time for court challenges of petition signatures between the time that those signatures are submitted and the

11

election." Docket 25 at 12. In its brief to this Court, the State provides an

example of why it believes this interest is legitimate and important:

> Speaker Hansen experienced firsthand the constraints placed on the legal process by the current petition filing deadlines. As Co-Chair of the Life Defense Fund, Speaker Hansen participated in a challenge in South Dakota Circuit Court of the petitions submitted by Plaintiffs in support of Amendment G. The Circuit Court initially dismissed Life Defense Fund's complaint, asserting that it should have been filed as a Writ Quo Warranto. Life Defense Fund appealed this decision to the South Dakota Supreme Court, and the Supreme Court reversed the lower court's decision and remanded for further proceedings. Importantly, the South Dakota Supreme Court denied Life Defense Fund's request to direct the lower court to expedite the challenge to Amendment G. The parties were awaiting a trial date before the circuit court when the elections were held on November 5, 2024. Because Amendment G was rejected at the ballot box, Life Defense Fund's challenge to the underlying petitions was dismissed by unopposed motion. Despite the most diligent efforts of the Plaintiffs, Life Defense Fund was not able to resolve its legal challenge to the petitions underlying Amendment G within the available timeframe.

*Id.* at 12–13.[4]

At the evidentiary hearing, counsel for the State reiterated that the Life

Defense Fund litigation exemplifies the need for more time for citizens to

challenge a petition prior to an election. And while some petition challenges

might proceed on an expedited basis, counsel noted that there are no statutes

requiring lawsuits, like the Life Defense Fund case, to proceed expeditiously.

---

[4] The State requests that the Court take judicial notice of Minnehaha County Civil File # 24-002366 and the files of two South Dakota Supreme Court cases pursuant to Federal Rule of Evidence 201. Docket 25 at 12 n.6, 12 n.8. The Court notes that during the evidentiary hearings, both parties entered into evidence thousands of pages of documents and court records related to the Life Defense Fund litigation. The parties also presented hours of testimony concerning attorney conduct and the integrity of that conduct during the Life Defense Fund litigation. It thus seems unnecessary to also take judicial notice of these court records, but the Court grants the request nonetheless. *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (courts "may take judicial notice of judicial opinions and public records").

Thus, in the State's view, a nine-month deadline is necessary to give meaning to a citizen's right to challenge a petition in court. Also, the State surmises that had a nine-month deadline been in place during the Life Defense Fund litigation a trial could have potentially occurred on Amendment G prior to the election. *Id.* at 23. Finally, the State acknowledges that an election contest can be litigated after an election; however, it argues that there is a legitimate government interest in petition challenges being resolved prior to an election so that voters know whether measures are validly on the ballot. *Id.* at 25.

Dakotans for Health responds that "[t]he State has *no* interest in the process (except as to the Secretary of State's signature verification), let alone an 'important' or 'compelling' one." Docket 32 at 24. This is because "the State has eschewed any interest in the petition challenge process" by "leaving the entire process to private individuals" in SDCL § 2-1-18. *Id.* at 23. Dakotans for Health further asserts that even if the State does have an interest, there is no legitimate purpose for "prohibiting three months of core political speech during an election year" because enactments can be challenged post-election. *Id.* at 26. Relatedly, Dakotans for Health argues that government interest is not legitimate because the nine-month deadline cannot accomplish the State's goal of concluding litigation on a petition challenge when one considers the right to appeal a circuit court's decision to the South Dakota Supreme Court and the time it takes for an appeal to be resolved. *Id.* at 27. Finally, Dakotans for Health claims "[t]he alleged state interest in voters knowing, before they vote,

how a challenge may be resolved did not exist until the 2025 Legislature and Speaker Hansen contrived it." *Id.* at 32.

The Court is not persuaded that the State has tied HB 1184's nine-month deadline to the *State's* regulatory interest in protecting the integrity and reliability of the initiative process. *See SD Voice IV*, 60 F.4th at 1080–81 (noting the State's paramount interest in protecting the integrity of its initiative process). While the Legislature ultimately agreed to change the filing deadline to nine months, the impetus of HB 1184 was Speaker Hansen's inability to have a trial on the challenge to Amendment G prior to the election. But Speaker Hansen was acting as an interested person on behalf of Life Defense Fund in that litigation, not as a government actor. Indeed, the Legislature has given the right to institute such a lawsuit only to citizens, not the State. *See* SDCL § 2-1-18.[5]

However, even if this Court were to agree that the State has a regulatory interest allowing citizens more time to litigate petition challenges prior to an election, the State has not shown that a nine-month filing deadline satisfies that interest. The nine-month deadline simply allows for three more months of litigation that may or may not result in a final resolution before an election.

---

[5] That statute provides in relevant part: "Nothing in §§ 2-1-15 to 2-1-18, inclusive, prohibits any interested person who has researched the signatures contained on a validated petition from challenging in circuit court the validity of any signature, the veracity of the petition circulator's attestation, or any other information required on a petition by statute or administrative rule, including any deficiency that is prohibited from challenge under § 2-1-17.1. . . . Any appearance by the attorney general at a challenge under this section shall be limited to the process of signature verification by the Office of the Secretary of State under chapter 2-1." SDCL § 2-1-18.

The State acknowledges as much. *See* Docket 25 at 23 (noting that the ability to bring a petition challenge earlier "would have *potentially* allowed the trial in the Amendment G matter to occur in October, prior to the election, rather than January, after the election" (emphasis added)). Moreover, even if a trial would have occurred on Amendment G before the election, that does not mean the case would have reached a final resolution—appeal and all—before the election. In fact, the appellate court may decline to consider the issue until after the election. *See State ex rel. Cranmer v. Thorson*, 68 N.W. 202 (S.D. 1896) (declining to decide pre-election challenge until after the election).

Setting aside that a nine-month deadline is not likely to result in final litigation of a citizen petition challenge prior to an election, the Court notes the absence of legislation requiring that such cases proceed on an expedited basis. The Court also considers that the State's legitimate interest in election integrity is protected in part by the ability to bring post-election challenges. *See Gooder v. Rudd*, 160 N.W. 808 (S.D. 1916); *Barnhart v. Herseth*, 222 N.W.2d 131 (S.D. 1974); *Bienert v. Yankton Sch. Dist.*, 507 N.W.2d 88 (S.D. 1993); *Thom v. Barnett*, 967 N.W.2d 261 (S.D. 2021). Ultimately, however, the State has failed show that the nine-month deadline created by HB 1184 furthers an important regulatory interest. Therefore, nine-month filing deadline in SDCL §§ 2-1-1.1 and -1.2 is unconstitutional under the First Amendment.

### B. Remaining Injunction Factors

In addition to showing success on the merits, Dakotans for Health has also shown irreparable harm, as "the loss of First Amendment freedoms, for

even minimal periods of time, unquestionably constitutes irreparable injury." *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). The State identifies no injury an injunction might inflict; nevertheless, this Court finds that the threat of irreparable harm outweighs any potential injury to the State. *See Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Finally, the public interest is served by protecting First Amendment rights. *See Kirkeby v. Furness*, 52 F.3d 772, 775 (8th Cir. 1995) ("[T]he public interest, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern."); *Dakotans for Health*, 52 F.4th at 392 (there is no interest in enforcing unconstitutional restrictions).

## CONCLUSION

Because the filing deadline in SDCL § 2-1-1.1 and SDCL § 2-1-1.2 violates the First Amendment, it cannot be enforced. Accordingly, it is hereby

ORDERED that the filing deadline in SDCL § 2-1-1.1 and SDCL § 2-1-1.2 of "by the first Tuesday in February of a general election year" is unconstitutional and unenforceable. It is further

ORDERED that Secretary of State Monae Johnson, in her official capacity, and her officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, are permanently enjoined from carrying out, implementing, and enforcing the provisions of South Dakota House Bill 1184, in any manner whatsoever, in accordance with this order. It is further

16

ORDERED that Plaintiffs' motion for a permanent injunction, Docket 3, is granted. It is further

ORDERED that Plaintiffs' motion for a preliminary injunction, Docket 3, and motion to strike Defendant's jury trial demand, Docket 35, are denied as moot.

DATED August 29, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE