# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2940

_____

Dakotans for Health; Rick Weiland

*Plaintiffs - Appellees*

v.

Monae Johnson, Secretary of State; in her official capacity only

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: June 9, 2026
Filed: August 11, 2026

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Three years ago, we struck down South Dakota's one-year pre-election deadline for filing citizen petitions to enact state laws and amend the state constitution. *SD Voice v. Noem*, 60 F.4th 1071 (8th Cir. 2023). South Dakota initially responded to that decision by enacting a six-month pre-election deadline. Last year, however, the state enacted a new law that moved the filing deadline to nine months before the general election. Dakotans for Health and Rick Weiland

sued in the district court[1] for a permanent injunction against the nine-month deadline on First Amendment grounds.  Applying *Anderson-Burdick* "sliding" scrutiny, the district court held that the deadline violated the First Amendment and issued a permanent injunction.  We affirm.

## I. Background

We previously detailed South Dakota's citizen petition system in *SD Voice*. *See* 60 F.4th at 1075-76.  In short, the South Dakota Constitution permits citizens to place petitions on the statewide ballot to enact statutes and amend the state constitution.  *See* S.D. Const. art. III, § 1 (statutes); S.D. Const. art. XXIII, § 1 (Constitution).  The state, however, does not permit a petition to reach the statewide ballot unless it has been signed by a certain percentage of eligible voters.  *SD Voice*, 60 F.4th at 1075.  The state also has set a statutory pre-election deadline by which citizens must submit petitions with the requisite number of signatures for inclusion on the general election ballot.  Prior to our decision in *SD Voice*, that deadline was one year before the general election.

In *SD Voice*, we concluded that the state's one-year deadline violated the First Amendment.  *Id.* at 1080-83.  Applying *Anderson-Burdick* "sliding" scrutiny,[2] we explained that an effective ban on the "petition process one year before the next election" did not meaningfully serve South Dakota's legitimate interests in signature verification, administrative efficiency, and crafting legislative responses to citizen petitions.  *Id.*  South Dakota responded to our decision by enacting a six-month pre-election deadline for the filing of petitions.  Then, two years later, the state enacted H.B. 1184, which moved up the filing deadline to nine months before the general election.

---

[1]The Honorable Camela C. Theeler, United States District Judge for the District of South Dakota.

[2]*See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

-2-

In April 2025, a healthcare advocacy group, Dakotans for Health, and one of its organizers, Weiland, sued the South Dakota Secretary of State in her official capacity (hereafter, "South Dakota" or the "state") in the district court, alleging that the nine-month deadline violated the First Amendment and seeking a permanent injunction against its implementation. After two days of hearings at which the plaintiffs and the state presented testimony, the district court concluded that the deadline violated the First Amendment. The district court assumed without deciding that strict scrutiny did not apply because South Dakota could not justify the deadline under the more lenient *Anderson-Burdick* test. Applying less-exacting review under *Anderson-Burdick*, the district court rejected that the state's only proffered interest in the new deadline—providing citizens with sufficient time to litigate petition challenges before the general election—constituted an "important regulatory interest." Even assuming otherwise, however, the district court alternatively held that the state had failed to show why the nine-month deadline furthered that interest. Having determined that the plaintiffs had demonstrated success on the merits of their First Amendment challenge, the district court proceeded to find that they had met the other requirements for a permanent injunction.

South Dakota appeals, arguing that the district court erred in its merits analysis by (1) failing to credit its provision of time for citizens to complete pre-election petition challenges as an "important regulatory interest" and (2) finding that the deadline failed to serve that interest.

## II. Discussion

We review the grant of a permanent injunction for abuse of discretion. *See SD Voice*, 60 F.4th at 1077. "A district court abuses its discretion by resting its decision on clearly erroneous factual findings or an erroneous legal conclusion." *Miller v. Thurston*, 967 F.3d 727, 735 (8th Cir. 2020). Here, we assess *de novo* the district court's legal conclusion that the nine-month deadline is unconstitutional. *See*

-3-

*Calzone v. Summers*, 942 F.3d 415, 419 (8th Cir. 2019) (en banc).  We conclude that the nine-month deadline violates the First Amendment.

To begin, South Dakota makes a few important concessions.  It acknowledges that the nine-month deadline places some "burden" on its citizens' speech and thus implicates the First Amendment.  The state also concedes that the district court applied the correct level of scrutiny to evaluate the deadline's constitutionality, asking whether the deadline "is reasonable, nondiscriminatory, and furthers an important regulatory interest." *See Miller,* 967 F.3d at 740.  The state disputes only the district court's application of that standard, specifically its conclusions that (1) the state does not have an "important regulatory interest" in the completion of private legal challenges to filed petitions before the general election and (2) regardless, the nine-month deadline failed to further that interest.  *See id*.

Assuming *arguendo* that the state has asserted an "important regulatory interest" in pre-election petition litigation, we affirm the district court's injunction because the nine-month deadline fails to further that interest.[3]  The state argues that providing three additional months for citizens to litigate petition challenges before the general election relates to its "paramount" interest in "protecting the integrity of its initiative process." *See id.*  Even were that the case,[4] however, nothing in the record indicates that the new deadline advances that interest in a meaningful way.

To begin, the state does not dispute that South Dakota law permits courts to provide petition challengers with complete relief post-election and thereby protect the integrity of the election process.  *See, e.g.*, *Thom v. Barnett*, 967 N.W.2d 261,

---

[3]Although the dissent argues that "[o]ur sister circuits that have considered the question" would conclude that the state has asserted an important regulatory interest, *see post*, at 8, we need not resolve here whether that is so.

[4]The state's failure to assert its interest in private petition litigation in *SD Voice* supplies reason for doubt.  *See* 60 F.4th at 1080-83 (describing the state's asserted "important regulatory interests").  That said, we need not settle the issue given the clearer ground for affirmance before us.

-4-

272, 281 (S.D. 2021) (striking down an approved constitutional amendment after post-election challenge even "where the defects [in the amendment] were known and could have been addressed before the election").

Further, the district court record firmly established the improbability of fully resolving private petition challenges prior to the general election even under the new deadline. In fact, the state's central example of petition litigation that would have benefited from the nine-month deadline is a case that at best would have gone to trial just weeks before the general election. We see no reason to credit the state's assertion that the new deadline furthers its interest in the complete litigation of petition challenges when its own briefing suggests any such litigation would almost certainly continue past the general election. Although the dissent argues that "[i]t is self-evident that more lawsuits will resolve in nine months than in six," *see post*, at 10, the state has offered us no evidence that the incremental three-month extension would make a difference. Without "evidence connecting the [new] deadline to its asserted interests," the state has failed to justify the burden that the deadline imposes on its citizens' speech. *See SD Voice*, 60 F.4th at 1082.[5]

Perhaps recognizing as much, the state also argues that the nine-month deadline supports "public confidence in the initiative and referendum process" by allowing for pre-election litigation that provides "reasonable assurances to voters that a measure is properly on the ballot." Again, however, the state fails to explain why legal challenges that would likely be pending trial or appeal as of the general election could offer such "assurances." In fact, one could imagine an increase in voter confusion and distrust if, post-election, the state's supreme court reversed a trial court's pre-election petition decision. Nor does the state provide sufficient

---

[5]The dissent notes that "the Tenth Circuit rejected a First Amendment challenge to a *six-month* circulation period because the law provided 'ample time to circulate petitions.'" *Post*, at 8 (quoting *Am. Const. L. Found., Inc. v. Meyer*, 120 F.3d 1092, 1099 (10th Cir. 1997) *aff'd sub nom.*, 525 U.S. 182 (1999)). We simply clarify here that the time it takes petitioners to circulate their petitions is not reflective of how long it may take parties to litigate petition challenges.

factual or legal support for the proposition that pre-election petition litigation, in general, is likely to advance "public confidence in the initiative and referendum process."

Therefore, we find no error in the district court's conclusion that the state's nine-month petition filing deadline fails to further an "important regulatory interest." *See SD Voice*, 60 F.4th at 1080.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

LOKEN, Circuit Judge, dissenting.

South Dakota law provides that petitions for citizen ballot initiatives must be signed by a required percentage of eligible voters.  South Dakota House Bill 1184 bars those wishing to file petitions from collecting voter signatures more than twenty-four months preceding a designated general election, and requires filing the required petition signatures at least nine months before the election, leaving time for citizen challenges to the lawfulness of the petition to be litigated before the election.

A ballot question committee sued to enjoin the prior twelve month deadline, claiming the law violated its First Amendment rights because it "involves a limitation on political expression that triggers the First Amendment's protections." SD Voice v. Noem, 60 F.4th 1071, 1078 (8th Cir. 2023) (internal quotations omitted), quoting Meyer v. Grant, 486 U.S. 414, 421 (1988).  The state defendants responded, arguing that the prior deadline survived the Anderson-Burdick "sliding" scale of First Amendment scrutiny because its limited burden on petition organizer speech is "reasonable, nondiscriminatory, and furthers an important regulatory interest." See Miller v. Thurston, 967 F.3d 727, 740 (8th Cir. 2020).  In SD Voice, we held that election integrity is a "paramount" state interest, but we upheld the district court's conclusion that South Dakota "failed to provide evidence connecting

-6-

the one-year [statutory] deadline to its asserted interests." The legislature responded by creating a new six-month deadline. 60 F.4th at 1082-83. South Dakota then enacted HB 1184, increasing the deadline from six to nine months. Representatives of a healthcare advocacy group then filed this lawsuit to enjoin the nine-month deadline.

Following an evidentiary hearing, the district court permanently enjoined HB 1184, concluding it does not further *any* important state interest. The state defendants appeal, challenging the court's legitimate-state-interest ruling. This court now affirms "the district court's conclusion that the state's nine-month petition filing deadline fails to further an important regulatory interest." In my view, the Constitution does not authorize this federal court micromanagement of state elections. Accordingly, I respectfully dissent.

HB 1184 furthers the State's "paramount" interest in election integrity by extending the time for pre-election petition litigation from six to nine months. This increases the likelihood that citizen suits will be resolved prior to the election, allowing state election officials to remove unlawful citizen initiative petitions from the ballot, and avoiding the disruption of a post-election ruling that the citizen initiative was invalid. The State's integrity concern is not hypothetical. In 2018 alone, four ballot measures were struck based on invalid signatures, one of which contained nearly 45% invalid signatures. Dakotans for Health v. Noem, 543 F. Supp. 3d 769, 776 (D.S.D. 2021), aff'd, 52 F.4th 381 (8th Cir. 2022).

South Dakota relies on private citizen suits because, like many States, it verifies only a small percentage of petition signatures, and some issues are not easily detected through state signature review (for example, when circulators mislead signatories as to the substance of the petition). See John Doe No. 1 v. Reed, 561 U.S. 186, 198-99 (2010). At the hearing, the State presented concrete evidence that the prior six-month deadline was too short to resolve citizen suits -- a lawsuit spearheaded by Speaker of the South Dakota House Jon Hansen that did not resolve prior to the election. The State is not required to provide "elaborate, empirical

-7-

verification of the weightiness of the State's asserted justifications," <u>Timmons v. Twin Cities Area New Party</u>, 520 U.S. 351, 364 (1997), and it is allowed to "respond to potential deficiencies in the electoral process with foresight rather than reactively." <u>Munro v. Socialist Workers Party</u>, 479 U.S. 189, 195-96 (1986).  This evidence was more than sufficient to meet its burden to show that HB 1184 furthers an important state interest.

Our sister circuits that have considered the question agree.  In <u>Schmitt v. LaRose</u>, the Sixth Circuit recognized a "legitimate and substantial" state interest in "ensuring that only ballot-eligible initiatives go to the voters" because "keeping unauthorized issues off the ballot reduces the odds that an initiative is later held invalid on the ground that the voters exceeded their authority to enact it."  933 F.3d 628, 641 (6th Cir. 2019) (cleaned up).  In <u>Soules v. Kauaians for Nukolii Campaign Comm.</u>, the Ninth Circuit noted that the law frequently incentivizes parties to bring pre-election challenges, which is "when the defects are most easily cured," because invalidating election results is a "drastic if not staggering" remedy that "wreaks [havoc] upon local political continuity."  849 F.2d 1176, 1180 (9th Cir. 1988) (quotation omitted).

Even more on point, in <u>American Constitutional Law Foundation, Inc. v. Meyer</u>, the Tenth Circuit rejected a First Amendment challenge to a *six-month* circulation period because the law provided "ample time to circulate petitions."  120 F.3d 1092, 1098-99 (10th Cir. 1997), <u>aff'd sub nom.</u> <u>Buckley v. Am. Const. L. Found., Inc.</u>, 525 U.S. 182 (1999).  The Supreme Court granted certiorari on other issues; it cited the Tenth Circuit's deadline decision approvingly.  "As the Tenth Circuit recognized in upholding . . . the six-month limit on circulation . . . States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally."  <u>Buckley</u>, 525 U.S. at 191.

The district court's contrary arguments why HB 1184 does not advance any important state interest are unpersuasive, bearing in mind that a state election law

-8-

needs only to further the state interest, not maximally achieve it.  See Miller, 967 F.3d at 740.  As the Supreme Court explained in John Doe:

> The State's interest in preserving the integrity of the electoral process is undoubtedly important. . . . The State's interest is particularly strong with respect to efforts to root out fraud, which not only may produce fraudulent outcomes, but has a systemic effect as well: It drives honest citizens out of the democratic process and breeds distrust of our government. . . . But the State's interest in preserving electoral integrity is not limited to combating fraud.  That interest extends to efforts to ferret out invalid signatures caused not by fraud but by simple mistake, such as duplicate signatures or signatures of individuals who are not registered to vote in the State.  That interest also extends more generally to promoting transparency and accountability in the electoral process, which . . . is essential to the proper functioning of a democracy.

561 U.S. at 197-98 (quotations and citations omitted).  Justice Sotomayor joined by two other justices further explained in a concurring opinion:

> [W]e must be mindful of the character of initiatives and referenda. These mechanisms of direct democracy are not compelled by the Federal Constitution.  It is instead up to the people of each State, acting in their sovereign capacity, to decide whether and how to permit legislation by popular action.  States enjoy considerable leeway to choose the subjects that are eligible for placement on the ballot and to specify the requirements for obtaining ballot access (e.g., the number of signatures required, *the time for submission*, and the method of verification).  As the Court properly recognizes, each of these structural decisions inevitably affects -- at least to some degree -- the individual's right to speak about political issues and to associate with others for political ends. . . . Regulations of this nature, however, stand a step removed from the communicative aspect of petitioning, and the ability of States to impose them *can scarcely be doubted*.  It is by no means necessary for a State to prove that such reasonable, nondiscriminatory restrictions are narrowly tailored to its interests.

Id. at 212-213 (Sotomayor, J., concurring) (emphasis added) (cleaned up).

-9-

The district court's first argument, which the majority rightly does not endorse, is that HB 1184 does not advance the *State*'s interest in protecting the integrity of the petition process because citizens, rather than the State, file petition challenges. This is plainly inconsistent with the Supreme Court's binding precedent that citizen anti-fraud measures advance states' election integrity interests. John Doe, 561 U.S. at 197-98. The State has a paramount interest in ballot initiative integrity even if it authorizes some enforcement by third parties.

The district court next argued that, even if South Dakota does have an election-integrity interest in pre-election citizen suits, this interest is not furthered by HB 1184 because a petition challenge might not be resolved within the extended nine-month pre-election deadline. But HB 1184 need not guarantee that challenges to citizen initiative petitions will conclude before the election to protect its election integrity interest. It is self-evident that more lawsuits will resolve in nine months than in six. The State's hearing witnesses included an experienced South Dakota election litigator who testified that parties often expedite these cases because they understand the issue should be resolved before the election. She cited examples of prior cases that were processed in time, one of which went to trial in under two months. A citizen suit need not reach final judgment before the election to remove an invalid petition from the ballot. With an additional three months, the court has more time to consider preliminary relief, to allow for a fuller record to develop, to decide whether to stay its decision pending appeal, and so on.[6]

Finally, the district court concluded that South Dakota's interest is not furthered by HB 1184 because post-election suits are already available to remedy any invalid petitions. The court overlooked that States can reasonably determine

---

[6]The court is wrong to suggest South Dakota's "own briefing suggests any such litigation would almost certainly continue past" the nine-month litigation, citing Speaker Hansen's suit. The Hansen suit involved atypical delays -- a pre-trial appeal to the South Dakota Supreme Court; transfer of the trial still scheduled *within the six-month window* to a judge with a full schedule on the allotted dates; and then rescheduling the trial within HB 1184's nine-month window.

-10-

that pre-election suits better protect election integrity than post-election suits.  A pre-election suit can remove a faulty initiative from the ballot before voters ever see it, whereas a successful post-election suit invalidates an initiative the public already approved, thus undermining public confidence in elections.  South Dakota knows this because it has experienced it.  Its citizens recently proposed a constitutional amendment whose submission to the voters was "plainly and palpably unconstitutional."  Thom v. Barnett, 967 N.W.2d 261, 281 (S.D. 2021).  It was invalidated by the courts after voters approved it, and Speaker Hansen testified that voters predictably "felt like they were disenfranchised."

In SD Voice, we affirmed an injunction of a 12-month circulation period, recognizing that "South Dakota's interest in election integrity cannot be disputed," but agreeing the State had not explained why it wanted a 12-month period.  We accordingly concluded that "*[o]n this record*, South Dakota has failed to show the filing deadlines further an important interest."  60 F.4th at 1080-81.  The State's assertion that twelve months was necessary to give election officials adequate time for its limited review of petition signatures was conclusory, and the record demonstrated that they in fact completed the review much faster.  Id. at 1081.  The record before us now is much different.  South Dakota has identified a specific reason why the six-month deadline plaintiffs prefer interferes with its election integrity interests and provided, with hearing testimony, a specific example from the last election in which its interests were frustrated.  Because the district court wrongly concluded HB 1184 does not advance any important state interest, I would remand for the district court to conduct the proper injunction analysis under John Doe and other controlling election authorities.

_____

-11-